The Chancellor.
As a general rule, an injunction will not be dissolved without the answer of the defendant on whom the gravamen of the bill rests. But if the answering defendant is able, from his own connection with the subject, and consequent knowledge, to lay facts before the court which show that the complainant has no equity, the injunction may de dissolved without the answer of such other defendant. The equity shewn by the bill did not rest on the extension of time for payment alone. The extension alleged would not have been sufficient to authorize an injunction. The only extension of time alleged in the bill related to the first payment. But, at about the time when the second payment became due, the first still remaining unpaid, the complainant, as charged in the bill, applied to Stillwell in relation to the conveyance, and Stillwell then said that the com *62 plainant had not complied with the agreement, and that he, Stillwell, would not fulfil it on his part. Here, then, was an end to the extension of time. This was in June, 1841; and the bill was not filed till June, 1846. But the bill stated that, notwithstanding this answer of Stillwell, the complainant had been permitted to remain in possession four years and upwards, before the ejectment was brought; and that he had expended in improvements upwards of $400. That Stillwell held the property some time after June, 1841, and then conveyed it to Brown, who had full knowledge of the agreement between Stillwell and the complainant; but that neither Stillwell nor Brown ever asked rent from the complainant, and that the complainant was considered as remaining in possession, not as tenant, under the leasing part of the agreement,but as purchaser, under the other part of the agreement. This brings the equity of the bill within the reach of Brown’s answer. Stillwell conveyed to Brown in August, 1843; and Brown swears that on the 1st of September, 1843, he sold and conveyed to S. S. Gregory, the father of the complainant, and with whom the complainant had lived; and that thereupon S. S. Gregory went into possession of the premises and leased the same, or a part thereof, being the forge property, to Foster Landing, by lease dated September 6, 1843; and that in June, 1845, he leased to Vanderen, who has ever since been in possession under the said S. S. Gregory; and Brown denies that the complainant has been in possession since he, Brown, conveyed, as aforesaid, to S. S. Gregory. Brown further states, that when he sold to S. S. Gregory, he took his bond and mortgage for the purchase money, and that S. S. Gregory made default of payment ; and that he, Brown, foreclosed the mortgage, and obtained the decree for the sale of the premises; and that the same was sold, accordingly; and that he bought them at the sale ; and that his action of ejectment, which was restrained, was founded on the deed he obtained for the premises under the said decree. This is a part of the case which the bill did not give; and which can hardly be supposed to have been unknown to the complainant. As to the repairs and improvements, the bill does not state when'they were made. If they were made after the deed from Brown to S. S. Gregory, the making them would go *63 to show the probable truth of the statement made by Brown, that the deed from him to S. S. Gregory was made with the approbation of the complainant; and to show that the deed from Brown to the complainant’s father was probably for the complainant’s benefit. Again, the complainant had the use of the property three years before the conveyance from Brown to S. S. Gregory. How much was done in the way of repairs and improvements within that period, and how much after the deed to S. S. Gregory, we are not informed.
Injunction dissolved.